```
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
```

ROSEMARY L. AUTREY,            )
         Plaintiff             )
              v.               )     C.A. No. 10-cv-30150-MAP
                               )
MICHAEL J. ASTRUE,             )
COMMISSIONER, SOCIAL           )
SECURITY ADMINISTRATION,       )
         Defendant             )


### MEMORANDUM AND ORDER REGARDING
### PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND
### DEFENDANT'S MOTION TO AFFIRM DECISION OF THE COMMISSIONER
(Dkt. Nos. 8 & 11)

April 25, 2011

PONSOR, D.J.

## I. INTRODUCTION

This action seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Social Security disability insurance benefits. The litigation presents an all-too-familiar fact pattern, where an individual indisputably suffers from some serious impairments, but where, unfortunately, these disabilities do not reach the level required for approval of benefits.

This is the background. Plaintiff applied for benefits on July 19, 2007, alleging disability since January 1, 2007, due to bipolar disorder, anxiety, depression, and insomnia. (A.R. 9.) Plaintiff's claim was denied initially on October 1, 2007, and again on appeal on September 26, 2008. Plaintiff requested an administrative hearing, which was held on January 27, 2009, before an administrative law judge ("ALJ"). On February 19, 2010, the ALJ issued his decision, finding that Plaintiff had not been disabled within the meaning of the Social Security Act, 42 U.S.C. § 1382c, since her date of application. (A.R. 7-16.) On May 25, 2010, the Decision Review Board issued a notice that it had failed to review the claim during the allotted ninety-day period, thus rendering the ALJ's decision final.

Plaintiff has moved for judgment on the pleadings (Dkt. No. 8), and Defendant has moved for an order affirming the decision of the Commissioner (Dkt. No. 11). Plaintiff's difficulties, both in relation to her own health and to caring for her son, are clearly substantial. Nevertheless, for the reasons stated below, the court is bound under the applicable standards to allow Defendant's motion (Dkt. No. 11) and deny Plaintiff's motion (Dkt. No. 8).

## II. FACTS

A.  Personal Life and Work Experience.

Plaintiff is in her mid-forties.  She left high school after the tenth grade.  Her past work included line cook and school crossing guard.  (A.R. 26.)  Plaintiff has four children, who each have different fathers.  (A.R. 189.) Only one child, a nine-year old son, is in her care.  The father of this child was incarcerated for a period of time and currently resides in another state.  (A.R. 29.)  He provides no support for his son, who has severe ADHD and receives Social Security disability benefits.  (A.R. 27.)

B.  Medical Evidence.

All of Plaintiff's medical evidence comes from her providers at the River Valley Counseling Center, where she commenced treatment on June 5, 2007.[1]  (A.R. 183.)

1. Social Worker Cathy Machak.

At her first appointment, Licensed Social Worker Cathy Machak diagnosed Plaintiff with post traumatic stress disorder, generalized anxiety, and major depression.  (A.R. 183.)  In her initial treatment plan, Machak indicated that Plaintiff's long-term goals were to "resolve core conflict that is source of anxiety," "appropriately grieve the losses in order to normalize mood and to return to level of

---

[1] The sole exception is a report from a physical exam that Plaintiff had on May 15, 2007, in which Dr. Andrew Szumowski noted that she had panic attacks and was "feeling depressed."  (A.R. 249.)

functioning," and "terminate behaviors that serve to maintain escape and denial while implement behaviors that promote healing of past events."[2] (A.R. 183.) Machak noted that Plaintiff was cooperative, well-oriented, agitated, and anxious, with a decreased energy level. (A.R. 189.) She further noted that Plaintiff took Zoloft and Ativan, which Plaintiff described as "helpful." (A.R. 188.)

Machak's notes from December 19, 2007, and January 7, 2008, indicate that she was assisting Plaintiff by encouraging her to use relaxation techniques and supporting her as she stabilized on a medication regime. (A.R. 336-37.) In June 2008, Machak completed a twelve-month review of Plaintiff's progress and reported that Plaintiff "has not been consistent with treatment" and that Plaintiff "states she is not as anxious since decreasing her coffee consumption from 20 cups to 2 cups daily." (A.R. 335.)

On June 19, 2008, Machak created an updated treatment plan for Plaintiff. (A.R. 332-34.) The long-term goals remained the same as those noted above. Machak observed that Plaintiff had "intense and distressing thoughts" and was continuing to struggle with anxiety despite trying many different medications over the past year. (A.R. 333.)

---

[2] Machak's reports include numerous references to an unspecified traumatic event in Plaintiff's past.

In July 2008, however, Machak described Plaintiff's mood as "stable." (A.R. 349.) In October 2008, Machak observed that Plaintiff's anxiety was having an impact on her relationship with her boyfriend. (A.R. 357.) In November 2008, Machak reported that Plaintiff was experiencing "intense anxiety," which she opined might be related to toxins released ten years prior when Plaintiff was bitten three times by a Brown Recluse spider.[3] (A.R. 359.) In March 2009, the report reflects some improvement, with Machak reporting that Plaintiff "states she is not feeling as anxious as she has been in the past." (A.R. 363.)

On June 19, 2009, Machak completed a second updated treatment plan for Plaintiff in which the same long-term goals were identified. (A.R. 369.) Attached to the plan was a twelve-month review, in which Machak wrote that Plaintiff's mood was "stable" and that she was "returning to enjoyable activities that she once enjoyed." (A.R. 371.)

    2.   <u>Nurse Practitioner Mollie Braun</u>.

In addition to seeing Machak, Plaintiff met regularly with Mollie Braun, a nurse practitioner at River Valley

---

[3] This is the only reference in the medical records to this incident.

5

Counseling Center who prescribed medications for Plaintiff. At their first meeting, on August 29, 2007, Braun reported that Plaintiff's rapport was "poor," that her anxiety symptoms were six-to-seven on a scale of ten, and that she was tearful. (A.R. 207.) One week later, on September 5, Braun reported that Plaintiff's depressive and anxiety symptoms were mild-to-moderate. (A.R. 205.) By the following week, on September 11, Braun described Plaintiff as feeling "better" and "good," with only mild anxiety symptoms and no depressive symptoms with the exception of "tearfulness." (A.R. 203.)

From October through December 2007, Braun's notes indicate that Plaintiff's depressive symptoms varied from non-existent, to mild, to moderate. (A.R. 253-64.) Her anxiety symptoms varied similarly, although each week Plaintiff reported that she had between two and four panic attacks. (Id.)

Throughout 2008, Braun reported that Plaintiff had no depressive symptoms, with the exception of "tearfulness" in August. In January, April, May, July, September, and November, Plaintiff's anxiety symptoms were intermittent. (A.R. 288, 290, 298, 300.) In February, March, and June, Plaintiff's anxiety symptoms were moderate. (A.R. 296, 304, 306.)

6

There is a gap in the record of Braun's treatment of Plaintiff until August 11, 2009, when Braun reported that Plaintiff had moderate depressive symptoms and moderate anxiety symptoms, with four panic attacks in the last three weeks. She noted that Plaintiff was attentive and that her concentration was good. (A.R. 383.) On September 22, 2009, Braun reported that Plaintiff had no depressive symptoms but stated that her anxiety symptoms were moderate-to-severe with eight-to-ten panic attacks. (A.R. 385.)

B.  **Ability to Work**.

1. **State Examiner**.

On September 21, 2007, Jon Perlman, Ed.D., reviewed Plaintiff's medical records for a state agency Mental Residual Functioning Capacity Assessment. He found Plaintiff to be, with few exceptions, not significantly limited in her ability to concentrate, understand, interact socially, or adapt to new settings. (A.R. 217-18.) He determined that she had recurrent recollections of a traumatic event (A.R. 226), which limited her functional abilities mildly to moderately. (A.R. 231.) He reported that she had never experienced an episode of decompensation and had only mild restriction on her activities of daily living. (Id.) Perlman concluded that Plaintiff's claims of anxiety and depression were credible but that the symptoms were insufficiently severe to meet listing requirements that

7

would entitle her to disability benefits. (A.R. 233.)

2. <u>Social Worker Cathy Machak</u>.

In September 2008, Cathy Machak wrote a letter for Plaintiff in which she opined that Plaintiff was "disabled and unable to work; this is directly due to the seriousness of her illness." (A.R. 280.)

On June 14, 2009, Machak completed a Psychiatric/Psychological Impairment Questionnaire in which she stated, "[i]t is my professional opinion that this client's symptoms and behaviors [are] extreme and this client is unable to hold an employed position." (A.R. 380.) She diagnosed Plaintiff with anxiety disorder, bipolar disorder, and post traumatic stress disorder (A.R. 373), all of which manifested in "obsessive thinking, impulsive behavior, racing thought[s], anxiety and panic attacks, intrusive thoughts related to traumatic events. Relational issues." (A.R. 375.) She opined that Plaintiff was markedly limited in numerous areas, including ability to understand, remember, or carry out instructions; ability to be punctual; ability to work with others; ability to make simple decisions; and ability to maintain socially appropriate behavior. (A.R. 376-77.) She estimated that Plaintiff would be out of work due to her mental impairments more than three times each month. (A.R. 380.)

3. <u>Nurse Practitioner Mollie Braun</u>.

In a letter to the ALJ,[4] Braun opined that Plaintiff "could slowly try a reentry into employment beginning an eight to ten hour week in a supportive situation." (A.R. 398.)

C. <u>The ALJ's Findings</u>.

The SSA disability determination is subject to a five-step process under 20 C.F.R. § 404.1520. At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the application date of July 19, 2007. (A.R. 9.) At Step Two, the ALJ determined that Plaintiff had the following severe mental impairments: bipolar disorder, anxiety, depression, and insomnia. (<u>Id.</u>) At Step Three, the ALJ found that Plaintiff's impairments did not medically equal the criteria of the listed impairments in 20 C.F.R. 404, Subpart P, App. 1. (A.R. 13.) At Step Four, the ALJ determined that Plaintiff had the Residual Functioning Capacity to perform a full range of

---

[4] During the course of the hearing, Plaintiff mentioned the name of a psychiatrist, Dr. Donna Cohen, from River Valley who had allegedly treated her once a month and knew her well but whose reports were not included in the record. The ALJ sent a letter to Dr. Cohen requesting her opinion about Plaintiff's mental impairments and her ability to perform an unskilled job. (A.R. 179.) Dr. Cohen responded by phone that she did not know Plaintiff personally but supervised Mollie Braun. (A.R. 182.) At Dr. Cohen's request, Braun subsequently sent a letter to the ALJ. (A.R. 398.)

work with the following nonexertional limitations: isolated from the public, only occasional contact with others, and unskilled. (A.R. 14.) Finally, at Step Five, the ALJ found that Plaintiff was unable to perform any past relevant work but could perform such jobs as a cleaner, laundry worker, or factory assembler. (A.R. 15.)

### III. DISCUSSION

Plaintiff argues that the ALJ erred by improperly evaluating her credibility, failing to find that she is <u>per se</u> disabled, and improperly weighing the medical source opinions.

A. <u>Standard of Review</u>.

Judicial review of a final decision of the Commissioner is limited to whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. <u>Seavey v. Barnhart</u>, 276 F.3d 1, 9 (1st Cir. 2001). The responsibility for weighing conflicting evidence and resolving issues of credibility belongs to the Commissioner and his designee, the administrative law judge. <u>See id.</u> at 10. The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §

405(g).  Substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Accordingly, the court must affirm the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  This is true "even if the record arguably could justify a different conclusion."  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

B.  **Whether the ALJ Improperly Evaluated Plaintiff's Credibility**.

Plaintiff contends that the ALJ failed to properly evaluate her credibility because he did not consider the subjective nature of many of her symptoms.  It is true that the ALJ found Plaintiff's statements concerning the intensity and persistence of her symptoms to be exaggerated. (A.R. 14.)  However, underlying his overall evaluation of Plaintiff's description of her mental status was the ALJ's general impression that, apart from her allegations of mental impairment, Plaintiff was "less than a fully credible

witness." (A.R. 12.)

1.  <u>Plaintiff's Credibility Generally</u>.

A "credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." <u>Frustaglia v. Sec'y of Health & Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987). In his decision, the ALJ remarked that Plaintiff was "less than forthcoming" at the hearing about her ability to maintain personal relationships and her work history. (A.R. 13.) The transcript reflects that the ALJ was attempting to root out what he perceived to be discrepancies between Plaintiff's subjective belief that she would be unable to work at an unskilled job in which she was isolated from people, and her apparent ability to parent her son, maintain a relationship with her boyfriend, and shop for groceries (even on a limited basis).[5] The

---

[5] The ALJ asked Plaintiff if there were any reasons she would not be able to perform a job such as a nighttime janitor, and she stated, "I'm really concerned with my anxiety disorder and my depression." (A.R. 40.) He then questioned, "[h]ow is it, given the fact that you're able to parent, given the fact that you've never been hospitalized for your mental impairment, ma'am, what, I want to know, what aspect of the cleaning job you couldn't do. You clean at home, don't you?" (A.R. 40.) Plaintiff responded, "Because it's hard for me to focus on a job and do the things I'm supposed to do at a job. . . . Because I'm in an atmosphere I'm unfamiliar with and it would bring my anxiety

12

transcript further reflects a number of instances in which Plaintiff's testimony was contradicted by the record. (See, e.g., A.R. 32-33 (denying that she ever drank twenty cups of coffee per day); A.R. 35-36 (answering affirmatively that she had been hospitalized for her anxiety and depression and then recanting after the ALJ requested the date and the cause); A.R. 37 (denying any period during which she exhibited no depressive symptoms).) Given this record, the court must conclude that the ALJ's credibility determination had clear and substantial support in the record. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) ("[F]actual inferences, credibility determinations, and resolutions of conflicts in the evidence are reserved to the Commissioner."); see also Green v. Astrue, 588 F. Supp. 2d 147, 156 (D. Mass. 2008) (quoting SSR 96-7p) ("'One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.'").

2. <u>Plaintiff's Credibility Regarding Her Disability</u>.

---

up and I already know that." (A.R. 40.) The ALJ further queried why, if she were able to cross the street to go to the store to get milk, she could not go to work given that she would eventually be familiar with the work location. He pointed out that she was there in the courtroom for the first time. She responded, "My medical history. . . . my anxiety, my depression, and that's what would stop me." (A.R. 44.)

With respect to the ALJ's finding that Plaintiff's claims of anxiety were exaggerated, the record reflects that, with the exception of one notation of severe anxiety in September 2009, the majority of both Machak and Braun's medical records indicate that Plaintiff was, at worst, moderately anxious. As noted above, in one of her final reports from June 2009, Machak opined that Plaintiff's mood was "stable" and that she was "returning to enjoyable activities that she once enjoyed." (A.R. 371.) Hence, the ALJ did not err in determining that Plaintiff's subjective statements of impairment were not supported by the record.

C. <u>Evidence of Per Se Disability</u>.

Plaintiff contends that the ALJ erred at Step Three by not finding her <u>per se</u> disabled pursuant to Medical Listing § 12.04, Affective Disorders, or § 12.06, Anxiety-Related Disorders. 20 C.F.R. Part 404, App. 1, §§ 12.04, 12.06. The ALJ's discussion of the Medical Listings was limited to determining whether Plaintiff satisfied Paragraph B of each Listing, which requires that the claimant's mental impairment be sufficiently severe such that it results "in at least two of the following" criteria:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of

14

extended duration.

20 C.F.R. Part 404, App. 1, §§ 12.04, 12.06.

As to both Medical Listings, the ALJ determined, and Plaintiff does not dispute, that there was no evidence of any episodes of decompensation. (A.R. 13.) With regard to the first three categories, the ALJ noted that a "marked limitation means more than moderate but less than extreme." (A.R. 13.) Throughout much of her treatment at River Valley, particularly in 2009, Plaintiff denied any depressive symptoms. (See, e.g., A.R. 265, 267, 298, 300, 308.) Thus, the ALJ properly determined that Plaintiff was not restricted by her depression and limited his analysis to her symptoms of anxiety.

With regard to her anxiety, at the hearing Plaintiff stated that she agreed with her therapists' assessment that her anxiety symptoms are "moderate to severe." (A.R. 37.) The ALJ, citing directly to Braun's medical reports, expressly found to the contrary, observing that Plaintiff's "contention of crippling anxiety is inconsistent with the reported frequency of her panic attacks, which . . . occur at the rate of 3-4 per week, and last for minutes at a time." (A.R. 12.)

On these grounds, the ALJ found that Plaintiff had only mild restrictions on her ability to complete the activities of daily living and moderate difficulties with regard to

concentration and pace. (A.R. 13.) It is notable that Braun consistently indicated that Plaintiff's cognitive functioning was intact, observing at nearly all of their appointments that Plaintiff was oriented, attentive, and had good judgment, insight, and concentration. (A.R. 203, 205, 253, 254, 255, 257, 259, 260, 262, 264, 265, 267, 269, 288, 290, 292, 294, 296, 298, 300, 302, 304, 306, 308, 310, 312, 314, 316, 318, 320, 322, 324, 326, 383.)

As to her ability to socialize, the ALJ found that Plaintiff had moderate limitations. Although this last finding may be doubtful (based on Plaintiff's testimony that she had never once been to her son's school due to her anxiety), it is of no moment given that Plaintiff must satisfy two of the four criteria in order to qualify as per se disabled.

It is true, as Plaintiff asserts, that the ALJ's conclusion is contradicted by the June 2009 psychiatric evaluation in which Machak opined that Plaintiff was "markedly limited" in most areas pertaining to her ability to work. (A.R. 376-77.) Equally true, however, is that an ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record." Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002). Here, the discrepancies between Machak's June 2009 treatment notes and the June 2009

psychiatric evaluation permitted the ALJ to draw his own, independent conclusion regarding Plaintiff's limitations. On the one hand, Machak's treatment notes describe Plaintiff as "consistent with treatment," "mood is stable with present medication," "more self aware of taking care of herself," and "returning to enjoyable activities." (A.R. 371.) On the other hand, Machak's psychiatric evaluation of Plaintiff portrays Plaintiff as "display[ing] extreme nervousness and agitation," "difficult stabilizing client on medication," "obsessive thinking, impulsive behavior," and moderately to markedly limited in nearly all facets of her life, including understanding, concentration, and the ability to make simple decisions. (A.R. 376-77.) With the exception of her reference to Plaintiff's medication, these opinions have little support in Machak's treatment notes and are expressly contradicted, as noted above, by Braun's notes. Accordingly, although the record might reasonably have supported a different conclusion, the ALJ was justified in giving little weight to Machak's psychiatric evaluation in determining whether Plaintiff was <u>per se</u> disabled. <u>See</u> 20 C.F.R. § 404.1527(ii)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

The court thus finds that the ALJ's assessment of Plaintiff's mental impairments has sufficient support in the

record to bar intervention on appeal. Although Plaintiff's ability to navigate through a normal day is unquestionably hampered at times by her anxiety, the ALJ's decision that her symptoms do not equal a Medical Listing cannot be said to lack substantial support.

D. <u>Medical Opinion Evidence</u>.

Plaintiff argues that the ALJ erred by giving little weight to the opinions of Cathy Machak and Mollie Braun and great weight to the non-examining source, Jonathan Perlman. As noted, Machak had opined that Plaintiff could do no work (A.R. 380) and Braun opined that Plaintiff could, at most, only return to work slowly, beginning at a rate of eight-to-ten hours per week. (A.R. 398.)

The ALJ observed that no "acceptable" source had offered a medical opinion that Plaintiff was unable to work in any capacity. See 20 C.F.R. § 416.913 (a)(1)-(2) (listing acceptable sources as including licensed physicians and licensed or certified psychologists); 20 C.F.R. § 416.927 (a)(2) (defining medical opinions as "statements from physicians, psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s)"). Indisputably, Machak, as a licensed social worker and not a psychiatrist, is technically not an "acceptable" medical source under the regulations. However, her opinion is highly pertinent due

18

to the length of time and frequency with which she treated Plaintiff. See 20 C.F.R. § 404.1527(ii) (giving more weight to opinion of treating source who can provide "longitudinal picture"). That said, as noted above, the ALJ's decision that the record, including Machak's own treatment records, does not support the conclusions in Machak's report or her ultimate opinion that Plaintiff is unemployable, cannot be rejected as unsupported. Therefore, the law does not permit this court to find that the ALJ erred in his evaluation of Machak's opinion.

In February 2010, Braun, who had signed the June 2009 assessment, sent a letter to the ALJ in which she described Plaintiff as varying from "stabilizing, feeling well to having break-through anxiety." (A.R. 398.) She opined that Plaintiff could slowly return to work at eight-to-ten hours per week. (Id.) The ALJ found this opinion to be "inconsistent" with the medical evidence showing that Plaintiff's symptoms ranged from mild to moderate. (A.R. 12.) Because the court cannot say that the ALJ's assessment that the medical evidence does not support Braun's opinion lacked sufficient support, it must find that the ALJ gave the opinion proper consideration.

Finally, the ALJ afforded the greatest weight to Perlman's assessment because he found it "consistent with the greater weight of evidence." (A.R. 13.) Plaintiff's

contention that the ALJ "ignore[d] medical evidence or substitute[d] his own views for uncontroverted medical opinion," is unfounded. Nguyen v. Chater, 172 F.3d 31, 31 (1st Cir. 1999). In fact, the ALJ noted that the evidence supported Perlman's conclusions and did not support the conclusions of either Machak or Braun. In sum, although a reasonable person (including perhaps this court) might have reached a different conclusion, it must be conceded that the ALJ did properly consider all of the medical opinions, determined which were supported by the record, and based his denial of benefits on that determination, all in a manner that had substantial support in the record.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 8) is hereby DENIED, and the Commissioner's Motion to Affirm the Decision of the Commissioner (Dkt. No. 11) is hereby ALLOWED. The clerk will enter judgment for Defendant. The case may now be closed.

It is So Ordered.

                                                 /s/ Michael A. Ponsor
                                                 MICHAEL A. PONSOR
                                                 U. S. District Judge